IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


TEREZ SHIELDS,

        Plaintiff,

vs.                        No.  14-0222-DRH

UNITED STATES OF AMERICA,

        Defendant.


## MEMORANDUM and ORDER


**HERNDON, District Judge:**

### I. Introduction, Background and Procedural History

This matter is before the Court on petitioner's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Docs. 1, 12 and 15).  The government opposes the motion (Doc. 23).  On February 18, 2015, the Court allowed Shields up to and including April 23, 2015 to file a reply brief (Doc. 25).  As of this date, Shields has not filed a reply.  Based on the following, the Court denies Shields' petition.  Further, having closely examined the record, the Court concludes that an evidentiary hearing is not necessary in this matter.  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Cooper v. United States,* 378 F.3d 638, 641–42 (7th Cir.

2004) (district court did not abuse its discretion in denying petitioner an evidentiary hearing where petitioner did not provide additional facts or assertions that would warrant a hearing).

On April 18, 2013, the grand jury returned a four count superseding indictment charging Shields with one count of conspiracy to distribute and possess with the intent to distribute marijuana (Count 1) and one count of attempting to possess with the intent to distribute cocaine (Count 3). *See United States v. Shields*, 12-CR-30330-DRH; Doc. 75. That same day, Shields pled guilty to the charges before Magistrate Judge Clifford J. Proud. *Id*. at Docs. 83, 84, and 85. Also that day, Magistrate Judge Proud issued a Report and Recommendation regarding the guilty plea and allowed the parties time to file objections. *Id*. at Doc. 86. Thereafter, the Court adopted the report and recommendation and found Shields guilty. *Id*. at Doc. 94.   On August 14, 2013, the Court sentenced Shields to 120 months in prison and judgment reflecting the same was entered on that day.  *Id*. at Docs. 106 & 109.[1]  During the proceedings, Shields was represented by attorneys Travis Noble and Joshua Sindel. Shields did not appeal his sentence and conviction.

Subsequently, Shields filed this § 2255 petition on February 18, 2014. Shields raises various arguments regarding ineffective assistance of counsel during his criminal case.   Specifically, Shields argues that his

---

[1] Prior to his guilty plea in the underlying criminal case, the Court, on May 3, 2012, revoked Shields' supervised release and sentenced him to 15 months imprisonment.  *See United States v. Shields*, 06-CR-30166-DRH; Doc. 725.

attorney failed to properly negotiate a plea, failed to investigate the discovery and failed to properly advise him of all the facts and law relative to the plea and, thus, his plea was not knowingly and voluntary and that counsel was ineffective at sentencing.  As the motion is ripe, the Court turns to address the merits of the petition.

## II. <u>Legal Standard</u>

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.  More precisely, "[r]elief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted).  As a result, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996); *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

Of course, a § 2255 motion does not substitute for a direct appeal.  A defendant cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice.  *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998);

*Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt*, 83 F.3d at 816.  Meanwhile, a § 2255 motion cannot pursue non-constitutional issues that were not raised on direct appeal regardless of cause and prejudice.  *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).  The only way such issues could be heard in the § 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding.  *Massaro v. United States*, 538 U.S. 500, 504-05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Fountain*, 211 F.3d at 433-34.  Further, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from that performance.  *Massaro*, 538 U.S. at 504-05.  For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

### III. Analysis

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).  A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 688-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Fountain v. United States,* 211 F.3d 429, 434 (7th Cir. 2000).  Either *Strickland* prong may be analyzed first; if that prong is not met, it will prove fatal to plaintiff's claim. *Strickland,* 466 U.S. at 697; *Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993).

Regarding the first prong of the *Strickland* test, counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland,* 466 U.S. at 689.  The petitioner's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted). In other words, the Court must not become a

"Monday morning quarterback." *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir. 1990).  With regards to the second prong of *Strickland,* the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).  "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome."  *Adams,* 453 F.3d at 435 (citing *Strickland,* 466 U.S. at 694).

In the instant case, the Court cannot say that counsel's performance significantly prejudiced Shields or that counsel's representation fell below an objective standard of reasonableness.  Further, the Court cannot say that despite these alleged errors the results of the proceedings would have been different.

First, the Court finds that Shields waived his right to file this § 2255 petition.  Shields entered into a non-cooperating plea agreement with the government for certain benefits.  In exchange for the benefits he received, he waived his right to a direct appeal and to a collateral attack under Section 2255.  *Shields*, 12-cr-30330-DRH, Doc. 84.  Specifically, the plea agreement provides in relevant parts:

> 10. The Defendant has read the Plea Agreement and has discussed it with defense counsel and understands it, and agrees to be bound by it.

> 3. The Government and Defendant submit that under the Sentencing Guidelines, after all factors have been considered,

Defendant will have an Offense Level of 29, a Criminal History Category of III, a sentencing range of 108-135, and a fine range of $15,000 to $150,000.  **However, the Defendant is aware that a mandatory minimum of 120 months exists in this case and that therefore his guideline range is effectively 120-135 months. The Government and Defendant agree that that these calculations of Offense Level and Criminal History are not binding on the Court, and that the Court ultimately will determine the guideline range after receiving the Presentence Report and giving both parties the opportunity to comment thereon.  The Defendant expressly recognizes that, regardless of the guideline range found or the sentence imposed by the Court, Defendant will not be permitted to withdraw Defendant's plea of guilty.** The Government agrees to recommend a sentence and fine at the low end of the range ultimately found by the Court.  The Government and the Defendant reserve the right to address the sentencing factors set forth in 18 U.S.C. § 3553(a), but agree not to seek a sentence outside the applicable Guideline range.

The agreement by the parties to not seek a variance from the Guidelines is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law.

**The government agrees that it will not file Information, pursuant to Title 21 United States Code 851, seeking increased punishment based on the Defendant's prior drug felony conviction (Conspiracy to Distribute and Possess With Intent to Distribute Marijuana and Cocaine, April 14, 2008, Southern District of Illinois, Cause No. 06-CR-30166-DRH).**

…

The Defendant understands that the Sentencing Guidelines are advisory only and that the Court has the discretion to sentence the Defendant anywhere up to the statutory maximum sentence after consideration of the Sentencing Guidelines, and the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense(s) and the criminal history and characteristics of the Defendant.

1. The Defendant understands that by pleading guilty, Defendant is waiving all appellate issues that might have been available if Defendant had exercised his right to trial.  The Defendant is satisfied with the representation received from defense counsel.  The Defendant acknowledges that he believes

that the Government has provided complete discovery compliance in this case.  The Defendant has reviewed the Government's evidence and has discussed the Government's case, possible defenses and defense witnesses with defense counsel.

2.  The Defendant is aware that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack.  However, in exchange for the recommendations and concessions made by the United States in this plea agreement, **the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law**, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), **the Defendant reserves the right to appeal the reasonableness of the sentence**.  The Defendant acknowledges that in the event such an appeal is taken, the Government reserves the right to fully and completely defend the sentence imposed, including any and all factual and legal findings supporting the sentence, even if the sentence imposed is more severe than that recommended by the Government.

*United States v. Shields*, 12-30330-DRH; Doc. 84, ps. 3-9 (emphasis added).

The Seventh Circuit has found these types of waivers to be valid.  The Seventh Circuit has held that "a waiver of a right to appeal contained within a guilty plea is enforceable," provided that the waiver is knowing and voluntary.  *United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir), *cert. denied*, 520 U.S. 1281 (1997); *United States v,. Schmidt*, 47 F.3d 188, 190 (7th Cir. 1995).  *See also*, *United States v. Wenger*, 58 F.3d 280, 281 (7th Cir.), *cert. denied*, 116 S.Ct 349 (1995).  A waiver will not be enforced,

however, if the district judge relied on impermissible facts in sentencing (for instance, the defendant's race or gender) or of the judge sentenced the defendant in excess of the statutory maximum sentence for the offense committed. *Feichtinger*, 105 F.3d at 1190. Further, the Seventh Circuit has found that a waiver of a Section 2255 relief in a plea agreement is enforceable, and should be treated no differently than the waiver of a direct appeal. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). Indeed the Seventh Circuit has specifically stated that both statutory and constitutional rights can be waived in a plea agreement. *Id*. at 1144, *United States v. Woolley*, 123 F.3d 627, 631-632 (7th Cir. 1997). *See also United States v. Woods*, 581 F.3d 531, 534 (7th Cir. 2009); *United States v. Emerson*, 349 F.3d 986, 988 (7th Cir. 2003).

For the waiver to be enforceable, Shields's sentence had to be within the maximum provided by the statute of conviction and the applicable guideline range based upon his relevant conduct. The statutory mandatory minimum penalty for conspiracy to distribute and possess with the intent to distribute in excess of 1,000 kilograms of marijuana is no less than 120 months, 21 U.S.C. §§ 841(a)(1) and 846 and the statutory mandatory minimum penalty for attempt to possess with intern to distribute in excess of 500 grams of cocaine is no less than 60 months, 21 U.S.C. § 841(a)(1) and 846. In fact, the statutory terms of imprisonment were outlined in his plea agreement and Magistrate Judge Proud, during the change of plea

hearing, informed Shields of the statutory sentencing ranges and Shields acknowledged that he understood. Based upon the conduct to which Shields admitted and others attributed to him in the conspiracy, his applicable guideline range of imprisonment was 120-135 months imprisonment. The Court sentenced Shields to 120 months imprisonment: a sentence within the guideline range and within the statutory range. The Court did not depart upward. Further, in exchange for the guilty plea, the government agreed not to file the information, pursuant to 28 U.S.C. § 851, seeking increased punishment based on Shields' prior drug charge in 06-CR-30166-DRH. Had the government filed that information, Shields' statutory sentencing range would have been 20 years to life imprisonment. Thus, Shields received a huge benefit to pleading guilty. There is no basis in the record for avoiding this waiver, and the Court neither relied upon constitutionality impermissible factors in sentencing Shields nor sentenced him above the statutory maximum. Thus, the waiver provisions of Shields's plea agreement are enforceable and Shields has waived his right to bring this § 2255 petition.

Even assuming *arguendo* that Shields did not waive his right to bring this 2255 petition, the Court finds that Shields's petition fails. His claims that his counsel were ineffective are without merit. The Court finds that Shields has not met the burden regarding the involuntariness of his plea. Moreover, the Court rejects Shields's arguments that his counsel did not

inform him of the facts and the elements of this case. First, Shields does not offer support for his allegation that his attorney did not advise him properly or investigate the discovery properly. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (petitioner must present objective evidence that he would not have entered the guilty plea; his own self-serving testimony is not enough). Therefore, his claims of ineffective assistance of counsel on these grounds do not succeed. *See United States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir.), *cert. denied*, 493 U.S. 831 (1989)(holding that even assuming petitioner's counsel should have advised petitioner of possible consequences of his plea, petitioner has the burden to offer evidence to support the bare allegations that his counsel failed to advise him of these possibilities).

Shields' arguments (that counsel told him that he must answer yes to the questions during the change of plea that he was coerced and coached into giving those answers and that counsel speed-read through the plea agreement) are belied by his own statements at the change of plea hearing which are presumed truthful. *See United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998). Even after Shields acknowledged that he read the plea agreement and the stipulations of facts, Magistrate Judge Proud thoroughly went over both the plea agreement and the stipulations of fact with Shields to ensure that he understood those documents. Specifically, the following occurred:

THE COURT: Do you understand what is happening here today:

SHIELDS: Yes, sir.

THE COURT: Do either counsel at this time have any doubts as to the defendant's competence to plead?

MR. SIMONSON: No, Your Honor.

MR. NOBLE: No, Your Honor.

THE COURT: Based upon Mr. Shields' responses to my questions, my own personal observations of him today and counsel's representations, I find that he is competent to understand these proceedings and to enter a knowing plea.  Have you had ample opportunity to discuss your case with your attorney, Mr. Noble, who is here today?

SHIELDS: Yes.

THE COURT: Are you satisfied, sir, with your attorney's representation so far in this case?

SHIELDS: Yes, sir.

…

THE COURT: Having discussed all of your rights with you, do you wish to change your plea from not guilty to guilty and plead guilty to Counts 1 and 3 of the Superseding Indictment?

SHIELDS: Yes, sir.

THE COURT: Mr. Shields, have you received a copy of the Superseding Indictment?

SHIELDS: Yes, sir.

THE COURT: Have you read it, sir?

SHIELDS: Yes, sir.

THE COURT: Have you discussed with your counsel, Mr. Noble, the charges of the Superseding Indictment to which you intend to plead guilty here today?

SHIELDS:  Yes, sir.

…

MR. SIMONSON: Yes, Your Honor.  For Count 1, conspiracy to distribute and possess with intent to distribute marijuana, the elements are, number one, that the conspiracy existed and, number two, that the defendant knowingly became a member of the conspiracy with the intent to advance the conspiracy.  Count 3, which is attempt to possess with intent to distribute cocaine; first element is that the defendant attempted to possess a controlled substance.  Second, that the defendant attempted to possess a controlled substance with the intent to distribute that controlled substance.  Third, that the defendant knew the substance he was attempting to possess with the intent to distribute was a controlled substance.

THE COURT: Thank you, Mr. Simonson.   Mr. Shield, do you understand the elements for the charges in Counts 1 and 3 that Mr. Simonson just read into the record.

SHIELDS: Yes, sir.

THE COURT: Let me explain to you, if I can, the possible maximum punishment involved in this case.   On Count 1, which is the conspiracy charge involving the 1,000 kilograms of marijuana, the possible penalty is a mandatory minimum of ten years, a maximum of life in prison, a fine of up to $10 million, or both the fine and imprisonment, a supervised release term, which is mandatory, which must be at least five years and can go up to life.  In addition there is a mandatory $100 special assessment.

On Count 3, which is the attempted possession with intent to distribute cocaine charge, the mandatory minimum penalty is at least five years up to a maximum of 40 years, a fine of up to $5 million, a supervised release term, which is mandatory, which must be at least four years and can go up to life.  In addition, there is a $100 mandatory special assessment on Count 3.

Those are the possible maximum penalties involved on both Counts 1 and 3, including the mandatory minimum penalties.   Do you understand the statutory maximum penalties?

SHIELDS: Yes, sir.

THE COURT: And do you also understand those statutory mandatory minimum penalties on each count?

SHIELDS: Yes, sir.

THE COURT: Has anyone threatened you or anyone else forced you in any way to come here and plead guilty today?

SHIELDS: No, sir.

THE COURT: Has anyone, including your own attorney or any other attorneys, made any prophecies, any promises or any predictions as to what your sentence ultimately will or will not be?

SHIELDS: No, sir.

…

THE COURT:  Have you and your attorney talked with each other about how the Sentencing Commission Guidelines might apply in your case?

SHIELDS: Yes, sir.

THE COURT: While the Court must be advised by the guidelines and the Court must determine what your guidelines are, independent of anything that Mr. Noble or Mr. Simonson's office would do, the Court will consider certain statutory factors under Title 18, which are outside the guidelines, including, among others, the nature and circumstances of the offense, the history and characteristics of the defendant, meaning yourself.  The Court will

impose a sentence that is sufficient, but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and to adequately deter future criminal conduct not only by you, sir, but by others who might be contemplating the same conduct.  Have you and your attorney talked with each other about how the statutory factors that are outside the guidelines might apply to your sentence?

SHIELDS: Yes, sir.

…

THE COURT: Do you understand that under some circumstances, either you or the Government may have a right to appeal any sentence that is imposed by the District Court, however, you are waiving most of your appellate rights?

SHIELDS: Yes, sir.

…

THE COURT: Mr. Shields, I have been handed a document here called Plea Agreement.  It is ten pages long.  The last page appears to have the signature of Mr. Simonson for the United States, Mr. Noble for the defendant, it is dated on the 16th.  Yours is dated today and what appears to be your signature, sir.  Is this your signature on the last page of the plea agreement?

SHIELDS: Yes, sir.

THE COURT: Have you read this plea agreement?

SHIELDS: Yes, sir.

THE COURT: Did you read it, sir, before you signed it?

SHIELDS: Yes, sir.

THE COURT: And did you discuss this plea agreement with your counsel, Mr. Noble, before you signed it?

SHIELDS: Yes, sir.

THE COURT: I want to go over just a few parts of this plea agreement, Mr. Shields, because I consider them to be the most important.  I realize that these are in the agreement and that you have read it and signed it, but I want to make absolutely sure that you understand some of this.  I see on page five in paragraph three that the Government and the defendant, meaning you and the Government, submit to the Court that under the guidelines after everything has been considered, you will have an offense level of 29, a criminal history of 3, where the guideline range is 108 to 135 with a fine range of $15,000 to $150,000, but I also see that you are well aware that there is a mandatory minimum of 120 months and that, therefore, you essential or effective guideline range is 120 months to 135 months.  Do you understand that, sir?

SHIELDS: Yes, sir.

THE COURT:  I also see on page six of the agreement that the Government agrees that it will not file an Information pursuant to Title 21, Section 851, seeking to increase your punishment because of a prior felony drug conviction.  Do you understand that, sir?

SHIELDS: Yes, sir.

THE COURT: Do you understand, Mr. Shields, that the Court is not bound by this plea agreement, which is an agreement or contract, so to speak, between and only between you and the Government?

SHIELDS: Yes, sir.

THE COURT: Has anyone made any promises to you other than what is in this plea agreement that has induced you to plead guilty today?

SHIELDS: No, sir.

THE COURT: Do you understand that any recommendation of sentence agreed by your counsel and the Government, or any agreement not to oppose your attorney's requested sentence is absolutely not binding on the District Court Judge and on the basis of your guilty plea he could sentence you to the maximum permitted by law, which I went over with you just a short moment ago? Do you understand this?

SHIELDS: Yes, sir.

THE COURT: Do you further understand that if the District Court Judge declines to impose any sentences recommended by the Government or your counsel and imposes an even more severe sentence on you, you will not be entitled to withdraw your plea?

SHIELDS: Yes, sir.

THE COURT: I find that the plea agreement is in proper form signed by both counsel and Mr. Shields.  I find that he has a very good understanding of the plea agreement and I order that it be filed of record.

…

THE COURT: Is this your signature on page two of the Stipulation of Facts:

SHIELDS: Yes, sir.

THE COURT: Have you read the stipulation, sir?

SHIELDS: Yes, sir.

THE COURT: Did you read it before you signed it?

SHIELDS: Yes, sir.

THE COURT: And did you discuss it with your counsel, Mr. Noble here, before you signed it?

SHIELDS: Yes, sir.

…

THE COURT: So you are telling me then, Mr. Simonson, that the Government's version of the offense in this case is this Stipulation of Facts?

MR. SIMONSON: Yes, Your Honor.

THE COURT: Mr. Noble, do you agree that what is in the Stipulation of Facts would be the Government's evidence in this case?

MR. NOBLE: Yes, Your Honor.

THE COURT: Mr. Shields, do you agree with Government's summary of what you did, which is, according to Mr. Simonson, contained in the Stipulation of Facts signed by everybody?

SHIELDS: Yes, sir.

THE COURT: So what you are telling me is that you did what the Government says you did, which is in the Stipulation of Facts?

SHIELDS: Yes, sir.

THE COURT: Is everything in this Stipulation of Facts true and correct to the best of your knowledge and belief, sir?

SHIELDS: Yes, sir.

THE COURT: So in essence then, you are telling me that you did what this stipulation says you did?

SHIELDS: Yes, sir.

THE COURT: I find that the Stipulation of Facts is proper in form, signed by both counsel and also Mr. Shields.  Mr. Shields has admitted under oath that everything in the Stipulation of Facts is true and correct to the best of his knowledge and belief and, in fact, is what he did in this case to violate the statutes in Count 1 and Count 3 of the Superseding Indictment.

Are you pleading guilty then because you are, in fact, guilty, sir?

SHIELDS: Yes, sir.

THE COURT: Are you doing this of your own free will?

SHIELDS: Yes, sir.

…

THE COURT: I also, hereby find that there, is indeed, a factual basis for the plea of guilty and Mr. Shields, since you acknowledge that you are, in fact, guilty as charged in Count 1 and Count 3 of the Superseding Indictment, since you know your rights to a trial by jury, what the maximum possible punishment is and the various mandatory minimum punishments, and since you are voluntarily changing you plea and pleading guilty, I accept your guilty plea. This Court will file a Report and Recommendation with the District Judge recommending an entry of judgment on your plea of guilty.

*Shields*, 12-CR-30330-DRH; Doc. 206, ps. 5-19.  Further, in his signed

stipulation of facts, Shields admitted:

> During the time frame charged in Count 1 of the Superseding Indictment in this case, the Defendant, with other individuals known and unknown, participated in a conspiracy to distribute and possess with intent to distribute marijuana. The conspiracy involved the delivery of marijuana to St. Clair County, Illinois. … The conspiracy also involved the transportation of money from the Eastern District of Missouri and the Southern District of Illinois to other districts in the United States. The Defendant admits the conspiracy existed and that he joined the conspiracy knowingly and with the intention of distributing and possessing with the intent to distribute marijuana. The Defendant admits that the amount attributed to the conspiracy was in excess of 1,000 kilograms.

*Shields*, 12-CR-30330-DRH; Doc. 85.

Clearly, Magistrate Judge Proud informed Shields that the Court would not be able to determine the guideline impact for the sentence in his case until after the Presentence Report was prepared and the Court reviewed the objections of the parties and that the sentence results from that may be different from one provided by counsel and the plea agreement. As stated before, Shields was aware of the consequences and benefits of entering into the plea agreement and decided to plead guilty. Moreover, the Court sentenced Shields to the low end of the applicable statutory guideline range.

In addition, Shields claims that government could not have shown that the case involved at least 1,000 kilograms of marijuana, thus, counsel ineffectively investigated the discovery and ineffectively explained the statutory elements and the sentencing guidelines as they applied to him. Further, Shields claims that his guideline range was too high and that

counsel failed to object to the grouping of his counts.  Also along this vein of arguments, Shields maintains that Mr. Noble should have moved with withdraw his plea when the Presentence Report attributed 997 kilograms of marijuana to him.  The Court rejects all of these arguments.

Shields claims that the government could have only proven the amount of marijuana actually seized in the case.  A review of the record indicates that Shields is wrong.  First, as demonstrated above, Shields pled guilty to over 1,000 kilograms of marijuana and he signed the stipulation of facts and the plea agreement admitting that the amount was over 1,000 kilograms of marijuana.  Further, he told Magistrate Judge Proud that he understood the plea proceedings and that he understood the nature of the charges that he was pleading guilty to.  Moreover, in a conspiracy, a controlled substance does not have to be seized from a defendant to be attributable to him and Shields' lawyer explained that to him.  In fact, Mr. Noble attested: "defense counsel explained to Mr. Shields that although less than 1,000 kg of narcotics was seized, conspiracy to possess or distribute 1,000 kg of marijuana pursuant to 21 U.S.C. Section 841(b)(1)(A) could be proved through other evidence." (Doc. 23-2, p. 1).  Further, Mr. Noble averred that he informed Shields that other evidence would consist of recorded conversations, testimony of witnesses and confidential informants, the introduction of evidence of currency seized (totaling $922,000), which could be equated to the value of narcotics.  Mr. Noble

also stated that he mailed a copy of the sentencing table under the federal sentencing guidelines to Shields on May 3, 2013. (Doc. 23-2, p. 2). According to the Sentencing Guidelines, the determination of relevant conduct for defendants should be based on all acts and omissions committed, aided, abetted, by the defendant; "in the case of a jointly undertaken criminal activity, all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity;" and for offenses under "Section 3D1.2(d), all acts and omissions described in subdivisions (1)(A) and (1)(B) above that are part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. Section 1B1.3. Based on Mr. Noble's affidavit, the plea agreement, the stipulations of fact, and the plea colloquy, it is pellucid that Mr. Noble properly described the sentencing guideline process to Shields and that Shields understood his plea. The record demonstrates that Mr. Noble was not ineffective in the plea negotiations. Further, Shields has not demonstrated the prejudice in that he cannot establish a reasonable probability that he would have gone to trial. Furthermore, as stated earlier, the government and Shields, through Mr. Noble, negotiated a non-cooperating plea agreement that included a promise from the government not to file a sentencing enhancement under Section 851. Had Shields not plead guilty the government most certainly would have filed that information which would have resulted in a mandatory minimum of 20

years imprisonment versus the 10 years imprisonment that Shields received.   See *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)(Defendant charged with 10 criminal counts pled guilty to one count to avoid prosecution on the other charges which significantly limited his statutory maximum sentence.)

Shields also argues that counsel was ineffective for failing to move for a reduction of his sentence based on his revocation sentence of 15 months. Again, Shields is wrong.  Mr. Noble was not ineffective as to this claim. Section 7B1.3(f) of the Sentencing Guidelines provides: "Any term of imprisonment imposed upon the revocation of probation or supervised release should be ordered to be served consecutively to any sentence of imprisonment that the defendant is servicing, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of the probation or supervised release.  See also 5G1.3(d). Thus, Shields cannot show that Mr. Noble was not ineffective or prejudice.

Further, Shields contends that Mr. Noble did not properly investigate his case as to one of the Confidential Informants ("CIs") in the case and as to how the $900,000 seizure applied to him.  Shields contends that had his counsel investigated the case he would have found out that one of the CIs had been killed and therefore the government could not have proven its case against him. The Court rejects this argument.   Shields has not demonstrated how his counsel was ineffective for not finding out that the CI

was dead nor has he shown prejudice.  First, the government was not required to identify that CI prior to Shields' change of plea or reveal to Shields that the CI was dead.  *See United States v. Wilburn*, 581 F.3d 618 (7th Cir. 2008)(the government has a limited privilege to withhold the identity of a confidential informant.); *see also United States v. Ruiz*, 536 U.S. 622 (2002)(The Constitution does not require the prosecution to disclose impeachment information relating to informants or any other witnesses before entering into a binding plea agreement.).  The CI's death does not show that Shields was innocent.  As to prejudice, Shields has not established that he would have gone to trial instead of pleading guilty.  As stated previously, had Shields gone to trial, he most certainly would have faced a 20 year mandatory minimum sentence.  Likewise, the same reasoning applies to his argument that Mr. Noble was ineffective for failing to investigate how the $900,000 applied to him.  Shields cannot show either deficient performance or prejudice.  As the Presentence Report states, the $900,000 seizure was a result of the investigation of the conspiracy that Shields admitted in his plea documents and plea hearing that he was a member of that conspiracy.  As mentioned previously, as a member of the conspiracy, the $900,000 was properly attributable to Shields.  Mr. Noble averred that he informed Shields that the money seizure could be attributed to him.  Doc. 23-2, p. 3).

Lastly, Shields argues that Magistrate Judge Proud was without authority to accept his guilty plea.  The Court rejects this argument.  As Shields' reliance on *United States v. Harden,* 758 F.3d 886 (7th Cir.2014), is misplaced.  *Harden* is premised on longstanding Supreme Court precedents.  *See, e.g., Peretz v. United States,* 501 U.S. 923, 931–33 (1991); *Johnson v. Ohio,* 419 U.S. 924, 925 (1974); *Brady v. United States,* 397 U.S. 742, 748 (1970).  This case is clearly distinguishable from *Harden.*  In *Harden,* the Seventh Circuit determined that, under the Federal Magistrates Act, magistrate judges are "not permitted to accept guilty pleas in felony cases and adjudge a defendant guilty." *Harden,* 758 F.3d at 888–91.  In *Harden,* the district judge did not make a decision to accept or reject Harden's felony guilty plea, after reviewing a report and recommendation.  The magistrate judge simply accepted Harden's felony guilty plea.  Shields' case is different.  Although he pled guilty at a hearing before Magistrate Judge Proud, Judge Proud issued a Report and Recommendation regarding the guilty plea.  *See Shields*, 10-CR-30330-DRH; Doc. 86  The Court then had an opportunity to consider—and accept or reject—the recommendation, after the parties had an opportunity to file objections.  The parties did not file objections and the undersigned judge accepted the guilty plea.  *Id*. at Doc. 94.  The Seventh Circuit did not question this methodology in *Harden*.  *See Harden*, at 891 ("There is widespread agreement that a magistrate judge may conduct a Rule 11(b)

colloquy for the purpose of making a report and recommendation. … We agree that this is a permissible practice.").

The Court concludes that Shields' claims that his counsel were ineffective are without merit.  His bald assertions (which are either not true or not supported by the record) that his counsel were ineffective are insufficient basis to grant him the relief he seeks.  "An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct."  *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001); *Fuller v. United* States, 398 F.3d 644, 652 (7th Cir. 2005)(finding that a claim of ineffective assistance unsupported by "actual proof of [his] allegations" cannot meet the threshold requirement for the purposes of a § 2255).  In fact, the Court concludes that counsel's actions were reasonable and sound in light of the circumstances.

Shields' sentence and conviction are legal.  He has not shown that his sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  Thus, the Court rejects Shields' 28 U.S.C. § 2255 petition/motion.  Finally, the Court notes that letting Shields' conviction and sentence stand would not result in a fundamental miscarriage of justice.  *Murray v. Carrier*, 477 U.S. 478, 495

(1986).

Under the 2009 Amendments to Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted. *See Sandoval,* 574 F.3d at 852. A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Where a district court denies a *habeas* petition on procedural grounds, the court should issue a certificate of appealability only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural

ruling. *See Slack,* 529 U.S. at 485.

As to petitioner's claims, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, or that this Court is barred from reviewing the merits of petitioner's claim. Reasonable jurists could not debate that the petition should have been resolved in a different manner, as petitioner's claims of ineffective assistance of counsel do not present evidence of constitutionally deficient attorney performance; nor do they demonstrate resulting prejudice. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## IV. <u>Conclusion</u>

Accordingly, the Court **DENIES** Shields' motion under 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence by person in federal custody. The Court **DISMISSES with prejudice** this cause of action. The Court **ORDERS** the Clerk of the Court to enter judgment reflecting the same. Further, the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 18th day of May, 2015.

Digitally signed by David R. Herndon
Date: 2015.05.18 14:22:56 -05'00'

**United States District Court**